United States District Court
Southern District of Texas
**ENTERED**
January 05, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TEMEX STEEL INC. et al., | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-cv-02490 |
| | § | |
| YOROZU AMERICA | § | |
| CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Before me is Defendants' Motion to Dismiss or, in the Alternative, to Stay ("Motion to Dismiss"). Dkt. 3. For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

## BACKGROUND

Plaintiffs TeMex Steel Incorporated ("TeMex") and TSI S.A. de C.V. ("TSI") originally filed this lawsuit in Harris County District Court against Defendants Yorozu America Corporation ("YA"), Yorozu Automotive Group Guanajuato S.A. de C.V. ("YAG"), and Yorozu Mexicana S.A. de C.V. ("YMEX"). YMEX timely removed the action to federal court.

According to Plaintiffs' Original Petition, Defendants had a long-standing relationship to sell scrap steel to TSI at the prevailing market price at the place of delivery. In November 2016, Plaintiffs allege, Defendants proposed a multi-year contract between the parties at a fixed discount from the Chicago American Metal Market ("Chicago AMM") price, but "that contract was never signed or consummated." Dkt. 1-1 at 4. "Nevertheless, Defendants began invoicing TSI at the proposed discount from the Chicago AMM." *Id.* In addition, Plaintiffs assert that "TSI made payments to the Defendants, which were not properly credited." *Id.* It is Plaintiffs' contention that "Defendants have now falsely alleged that not only

TSI, but also [TeMex], are indebted to them in an amount exceeding $3 million." *Id.* The Original Petition further contends that TeMex "has never purchased or agreed to purchase scrap from Defendants."[1] *Id.*

YAGM and YMEX claim that TSI grew progressively more delinquent on contractual payments over the past several years. They allege that at a February 2019 meeting in Mexico, TeMex's General Manager signed an Outstanding Balance Statement on behalf of TSI and TeMex, acknowledging that TSI and TeMex owed YAGM and YMEX more than $2.6 million.[2] Plaintiffs maintain that the General Manager's signature on the Outstanding Balance Statement is a forgery.

In late March 2019, after no payment had been made on the amount allegedly due, YAGM and YMEX filed suit against TSI in the Courts of the City of Guadalajara, Jalisco, Republic of Mexico. A few weeks later, in mid-April 2019, TSI and TeMex filed this action seeking a declaratory judgment that they "are not indebted to the Defendants" and "are not parties to any multi-year or fixed discount agreement with Defendants" for the sale of scrap metal. Dkt. 1-1 at 5.

Defendants now ask me to dismiss or, in the alternative, to stay this action for four independent reasons. First, Defendants aver that this case should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because none of them are subject to personal jurisdiction in Texas. Second, Defendants ask me to dismiss this action under Rule 12(b)(5) because they were not properly served with process

---

[1] Defendants dispute this, claiming that YMEX began to sell steel to TeMex in 2009 pursuant to a written contract. According to a declaration submitted by a corporate representative of YAGM and YMEX:

> A few months after the 2009 TeMex Agreement was executed, TSI was incorporated in Mexico in order for YMEX to continue selling its scrap steel to TeMex through TSI, as TSI was presented to YMEX as an international subsidiary of TeMex. In 2012, YAGM was established and also began selling scrap steel under the same conditions Plaintiffs had with YMEX.

Dkt. 5 at 5–6.

[2] This figure has allegedly increased to more than $3.7 million as of the date this case was removed to federal court.

under the Hague Convention. Third, Defendants maintain that, even if personal jurisdiction exists over them, this case should still be dismissed under the doctrine of forum non conveniens because Mexico is a far more convenient forum for the resolution of this case. Fourth, in the event I am unwilling to dismiss this case, Defendants ask that I abstain from hearing this lawsuit under the *Colorado River* abstention doctrine, pending resolution of the first-filed Mexican action.

Because, as explained more fully below, I find that personal jurisdiction does not exist over Defendants, I need not address Defendants' three other arguments in favor of their motion.

## LEGAL STANDARD

Rule 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over the defendant. "When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant." *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). In deciding whether the plaintiff has met that burden at this early stage in the case, "the court must accept as true all uncontroverted allegations in the complaint and must resolve any factual disputes in favor of the plaintiff." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012). To determine whether personal jurisdiction exists over a defendant, the district court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When a district court rules on a Rule 12(b)(2) motion without an evidentiary hearing, as is the case here, the plaintiff may establish personal jurisdiction by presenting a *prima facie* case that personal jurisdiction is proper. *See Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). After a plaintiff makes his *prima facie* case, the burden then shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019).

> To comport with due process demands, a plaintiff in a diversity case must establish that the non-resident defendant purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state and that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

*Zoch v. Magna Seating (Ger.) GmbH*, 810 F. App'x 285, 288 (5th Cir. 2020) (cleaned up).

The United States Supreme Court has recognized two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction. *See Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017). General jurisdiction exists over a nonresident defendant when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). "That is a high bar." *Johnson v. TheHuffingtonPost.com, Inc.*, --- F.4th ---, 2021 WL 6070559, at *7 (5th Cir. Dec. 23, 2021).

The specific-jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotation omitted). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that

establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (quotation omitted). Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The Fifth Circuit uses a three-step analysis for specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Ward v. Rhode*, 544 F. App'x 349, 352 (5th Cir. 2013) (quotation omitted). "Specific jurisdiction should be determined on a case-by-case basis under the facts of each individual case." *Zoch*, 810 F. App'x at 293.

## DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN TEXAS

Plaintiffs concede that general jurisdiction does not exist over Defendants. As a result, the personal-jurisdiction inquiry boils down to whether specific jurisdiction exists over Defendants. In tackling this issue, I keep in mind that Plaintiffs "must submit evidence supporting personal jurisdiction over each defendant, and cannot simply lump them all altogether." *Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 973 (S.D. Tex. 2018). *See also Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

Although YA is named as a defendant, Plaintiffs present no evidence or argument from which I could possibly determine that YA purposely directed any activities towards Texas or purposefully availed itself of the privilege of conducting activities in the Lone Star State. YA is incorporated under the laws of Michigan, and its principal place of business is located in Tennessee. The unrebutted evidence establishes that YA has no offices or employees in Texas, does not own any property in Texas, and has no contacts with Texas relating to the allegations set

forth in the Original Petition. As a result, I find that YA is not subject to personal jurisdiction in the State of Texas.

Next, I must determine whether I can exercise specific jurisdiction over YMEX and YGAM, two entities organized and existing under the laws of Mexico, with their principal offices in Mexico. As noted, the specific-jurisdiction analysis requires me to assess whether YMEX and YAGM have "purposefully availed [themselves] of the benefits and protections of the forum state such that [they] should reasonably anticipate being haled into court [here]." *Carmona v. Leo Ship Mgmt.*, 924 F.3d 190, 193 (5th Cir. 2019) (quotations omitted).

It is undisputed that YMEX and YGAM sold scrap steel to TSI, a business entity organized and existing under the laws of Mexico. But nothing about that relationship has anything to do with the State of Texas. All three entities are Mexican companies, the scrap steel was delivered in Mexico, and YMEX and YGAM conducted all communications with TSI from Mexico. Because Texas has absolutely no connection or relationship with the scrap steel agreement between YMEX, YGAM, and TSI, specific jurisdiction is lacking over YMEX and YGAM related to that contractual arrangement with TSI. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 310–13 (5th Cir. 2007) (no specific jurisdiction in Texas over a nonresident defendant where contract was to be performed in Russia); *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) (no claim-specific jurisdiction where all material performance under the contract was performed in Mexico).

Finally, I must consider whether claim-specific jurisdiction exists over YMEX and YGAM in connection with their alleged interaction with TeMex. In their Original Petition and the opposition to Defendants' Motion to Dismiss, Plaintiffs maintain that TeMex never entered into any agreement to sell scrap steel to Defendants, nor did it ever agree to assume responsibility for sums allegedly due by TSI. The only connection this matter has with the State of Texas is that TeMex is a Texas corporation with its principal place of business in Houston. But that,

6

alone, is insufficient to give rise to specific jurisdiction. *See McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) ("Jurisdiction must not be based on the fortuity of one party residing in the forum state."). *See also Carmona*, 924 F.3d at 194 (5th Cir. 2019) ("The plaintiff cannot supply the only link between the defendant and the forum." (quotation omitted)). For that reason, the Fifth Circuit has "consistently held that merely contracting with a resident of a forum state does not create minimum contacts sufficient to establish personal jurisdiction over a nonresident defendant." *Blakes v. DynCorp Int'l, L.L.C.*, 732 F. App'x 346, 347 (5th Cir. 2018) (cleaned up). *See also McFadin*, 587 F.3d at 760 (5th Cir. 2009) ("It is clearly established that merely contracting with a resident of the forum state does not establish minimum contacts" (quotation omitted)); *Moncrief Oil*, 481 F.3d at 312 ("[M]erely contracting with a resident of Texas is not enough to establish minimum contacts."); *Latshaw*, 167 F.3d at 211 ("[E]ntering into a contract with an out-of-state party, without more, is not sufficient to establish minimum contacts.").

YMEX and YGAM have no physical presence in Texas, conduct no business in Texas, and their representatives never visited Texas to negotiate or meet with TeMex. Faced with these jurisdictional obstacles, TeMex claims that specific jurisdiction exists because YMEX and YGAM sent emails to TeMex's offices in Texas attempting to get TeMex to "guarantee or become a party to their contracts or alleged contracts with TSI." Dkt. 9-1 at 2. But these actions, even if true, are insufficient to establish specific jurisdiction over YMEX and YGAM. It is well-settled in the Fifth Circuit that merely initiating contract discussions with a Texas resident does not suffice to confer personal jurisdiction over a nonresident defendant. *See Trois v. Apple Tree Auction Ctr., Inc.,* 882 F.3d 485, 489 (5th Cir. 2018) (no specific jurisdiction over out-of-state entity when contract was executed and performed outside Texas and only Texas contacts were conference calls negotiating the agreement while the plaintiff was in Texas); *McFadin*, 587 F.3d at 760 ("communications relating to the performance of a contract themselves are

insufficient to establish minimum contacts"); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("[T]his Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant."); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (holding that "communications [to Texas] in the course of developing and carrying out the contract was in itself . . . insufficient to constitute purposeful availment" where "the contract was centered in Oklahoma"); *Patterson*, 764 F.2d at 1147 (holding that defendant making telephone calls to Texas, wiring payments to Texas, and entering into contracts with two Texas entities was insufficient contacts with Texas to establish personal jurisdiction); *Barnstone v. Congregation Am Echad,* 574 F.2d 286, 288–89 (5th Cir. 1978) (holding contract initiated by Maine defendant with Texas resident, which was negotiated either in Maine or through the mail and performed in Maine, was not sufficient "minimum contact" to establish specific jurisdiction in Texas).

Because Plaintiffs have failed to present any evidence demonstrating that Defendants have purposefully availed themselves of the benefits and protections of the State of Texas, specific personal jurisdiction over Defendants is lacking.

***

For the reasons identified above, the Motion to Dismiss is **GRANTED**, and this case is dismissed. I will enter a separate Final Judgment.

SIGNED this 5th day of January 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE